and I will now call the next case. Durell Sims versus Secretary, Florida Department of Corrections. We have Evan Esrae, the attorney for the appellant and Olivia Kelman for the appellee. Uh, Mr Esrae, if you're ready to proceed, please begin. Thank you, Your Honor. And may it please the court. The P. L. R. A. Requires prisoners to exhaust all available administrative remedies before suing in court. Our argument is straightforward. Under Florida law, when a prisoner wants to change a rule, as Mr Sims did here, petitioning for rulemaking is an administrative remedy that can address the prisoner's complaint. And have we ever held that before? This court has not held that before. No, I don't believe this has ever been presented to this court before. And as we admit in our brief, I think there's only one circuit that has addressed that. That's the Ninth Circuit, which has concluded that the only remedies that ever need to be exhausted is the prison grievance system. Candidly, that cuts against us. But we think that the Ninth Circuit's conclusion betrays the text structure and history of the P. L. R. A. And I can jump into addressing that right now. The P. L. R. A. Exhaustion bar provides that no action shall be brought with respect to prison conditions by a prisoner confined in any jail until such administrative remedies as are available are exhausted. And the Supreme Court in Ross interpreted that clear text and said that the only limit on the types of remedies that need to be exhausted is availability. What the Ross court said, and I'm quoting, is that the text contains one significant qualifier. The remedies must indeed be available to the prisoner. But aside from that exception, the P. L. R. A.'s text suggests no limit on an inmate's obligation to exhaust. And so we think that the text in the Supreme Court precedent is clear here that any administrative remedy must be exhausted, not just the grievance system and structure confirms this. The very next section after the P. L. R. A.'s exhaustion requirement deals with the administrative grievance procedure. It says the failure of a state to adopt or adhere to an administrative grievance procedure shall not constitute a basis for an action under the P. L. R. A. And what this section shows is that when Congress wanted to discuss only prison grievance procedures, it knew how to do so. But in the exhaustion bar, it used the general term administrative remedy, which indicates that Congress wanted exhaustion to apply to any available administrative remedy. But we do have Florida does have an administrative rule that that talks about the grievance process, and it doesn't talk about, you know, the availability of a rulemaking of proposing rulemaking. How is this administrative rule not misleading to prisoners? So I think and let me just clarify to make sure I'm answering your question, Your Honor. Are you referring to Rule 33 1 of 3? 11? So I think that that provision absolutely so. So that rule says if the prison misses the final step in the grievance procedure, that's the central office review step. Then the prisoner can proceed to judicial remedies, and I'll give you the exact quote. It says he shall be entitled to proceed with judicial remedies as he would have exhausted his administrative remedies. And we think that there's three reasons why that provision does not make any remedy unavailable to Mr Sims here. The first is that Mr Sims did not claim below that he even knew about or relied on this provision. And so we don't think that Mr Sims can now say that this provision either made the remedy so obscure that he couldn't use it in the words across or thwarted him from using the rulemaking procedure. The only argument that Mr Case law and concluded that the prison grievance procedure was the only thing that the P. L. R. A. Required to be exhausted. And as I've explained, we think that that's incorrect. Now, even if you were considered the text of this provision alone, we still don't think that it gets Mr Sims to showing unavailability as a preliminary method. Methodological point, though, I don't think that the Supreme Court's teachings on the P. R. A. Ask us to examine this provision in a vacuum. I think what they ask is to examine this vision against the entire backdrop of Florida law that provides remedies and then ask from this provision. Would a prisoner be so misled that they could not use the remedy? Or in the words of this court's decision in Gobert, would it make rulemaking unknowable? And we don't think that it would. For the first reason, this provision unambiguously does not apply to Mr Sims. It only applies in the scenario when the prison misses the final step of the grievance procedure. And so I think what Mr Sims is argument really is here is that he drew an inference, perhaps a reasonable inference from this provision that the grievance procedure was the only game in town. But I think Ross squarely rejects that argument. Ross says that the fact that there are multiple reasonable interpretations of an administrative regime is not grounds to excuse to excuse exhaustion. And in fact, Ross says the opposite. It says that if prisoners are confronted with multiple interpretations, they should err on the side of exhaustion. So I think our friend's arguments on this provision are really just a rearticulation of the reasonable mistake standard that was rejected in Ross. How would how would a prisoner go about requesting a rulemaking? What's the procedure for that? So it's a pretty simple procedure. The rulemakings that I've looked at, they send a document to the Department of Corrections that says, here's the rule, and here's why I want to change. I don't think that there's a specific formal document that needs to be put in. I mean, they need to explain why they want to change the rule, but I don't think that it's a particularly onerous requirement to put in a petition to initiate rulemaking. And then at that point, the department has 30 days to either give reasons why it will not initiate rulemaking or to initiate a rulemaking, at which point the rule could be changed. Council, do you argue that this rulemaking procedure would apply in any case? I do not, Your Honor. We agree with our friends on the other side that rulemaking would not apply in a scenario where a prisoner is not challenging a rule. So let me give an example to make that more concrete. I think a mine run prison... The prisoner would be challenging the rules application, not the rule in phase. That's exactly right. So I think in the mine run scenario, a prisoner... Let's say an excessive force case. Every prison in the country has a rule that prohibits excessive force. When a prisoner says, you know, a guard used excessive force on me, they're not challenging a rule. They're not trying to change the rule. They're trying to apply the rule. We just don't think that that's the case here. If you look at the rule that the prison had in place, it said prisoners can either be clean-shaven or wear a half-inch beard, and the rule permitted no exceptions. And so I think what Mr. Sims was asking for is to change the rule either to permit him to wear a longer beard or to permit a regime of exemptions. And that's why I think this case calls for an application to initiate rulemaking. And I think that this has been gotten exactly right by the lower court in Smith v. Connors in the Middle District of Florida. And I'd encourage you looking at footnote 6 of that opinion, which we think gets it 100% correct. It says, look, when prisoners seek to change prison rules, then they need to go through rulemaking to exhaust, but when they just seek to have the rules correctly applied to them, they do not need to do so. And I think that the evidence in this case makes it very plain that a reasonable prisoner could have discovered and should have discovered rulemaking. And I'd like to start with the legal standard there, which is that, you know, the question is, and this is coming from Ross, whether a in Ross, and Gobert frames that as, is the remedy knowable? And I think it's important that that's a fairly low bar. This isn't the PLRA's predecessors, CRIPA's plainness requirement. This is something much easier for prisons to meet. And in this situation, rulemaking is in a publicly available statute. We know that that statute is available to inmates. If you look at our administrative code, section 33-501-3012, law libraries must have a access to law library resources. We also think that rulemaking would be a natural place for Mr. Sims to look. He is challenging a rule, and so we think that it's reasonable for him to go to the Administrative Procedure Act and look at the provisions on rulemaking, and that's especially so in the context of this case. If you look at the appendix, pages 56 and 58, which are the grievance responses, what the prison says to Mr. Sims is, you are challenging a rule. Your religious beliefs are not an exemption from that rule, which we think would have directed him to rulemaking. And I think that the empirics on this are also supporting us. If you look at page 22 footnote 10 of our initial brief, and this goes undisputed on our friend's response brief, lots of prisoners are initiating rulemaking every year. And I think all of that goes to show that rulemaking is an available remedy under the test in Ross, because a that rulemaking could have remediated his concern. Now, that leaves one other avenue to support the district court's decision, which is its conclusion that rulemaking operated as a simple dead end. But I don't think that rulemaking here can operate as a simple dead end, and I start with the legal test. What Ross says is that a rule operates as a dead end when there is no potential for relief. And our friends say that rulemaking operates as a dead end because Mr. Sims did not want to change the rule. He wanted an exemption, and we think that that's wrong, both legally and factually. I want to start with the legal argument, and that's just that Booth at the Supreme Court already rejected this precise claim. The fact that rulemaking may not have offered Mr. Sims the exact remedy he wanted is not a reason for him to avoid exhausting that remedy. In Booth, the prisoner requested money damages. The grievance procedure offered the prisoner no opportunity to receive money damages, and nonetheless, because the grievance procedure could have done something to remediate his allegations, the Supreme Court said that exhaustion was still required. The same is true here. Even if you think that all Mr. Sims wanted was an exemption, rulemaking indisputably could have remediated his complaint. We could have adopted a rule that said there is no limit on beard length whatsoever, or that allowed him to wear a fifth-length beard as the injunction below does. But more importantly, I don't think that Mr. Sims can plausibly say that all he wanted is an exemption, because even saying that is admitting that he wanted a rule change. The rule in this case did not permit exemptions whatsoever. And so when Mr. Sims says that he wanted an exemption, what is he asking for is an amendment to a rule. Florida procedure provides a method for Mr. Sims to get that remedy. It's administrative. Lots of prisoners have used it, and therefore we think it's available. Thank you. I'd like to reserve the balance of my time. Yes, thank you, Counsel. You have four minutes. And now we'll turn to Ms. Kelman. Please proceed. May it please the court. This is a case about religious freedom. Mr. Sims is a Muslim, and for him, trimming his beard is a sin. Just like for many Jews, it's prohibited to eat pork, and for many Christians, believe that they should attend church on Sundays. Below, the district court found after a full trial on the merits that Mr. Sims was entitled to a religious exception to grow a length beard in accordance with his beliefs. And on appeal, the department does not challenge any aspect of the ruling or the merits of that case. Instead, the department raises a procedural technicality and contends that Mr. Sims failed to exhaust. That's meritless for three reasons. First, the department failed to raise that issue at trial, it abandoned the affirmative defense of exhaustion, and thus can't raise that issue in this court. Second, Mr. Sims properly exhausted his administrative remedies, when he completed all three steps of the prison grievance process requesting an exception to the general rule of applicability to wear a religious beard. rulemaking was not required for an exception to a rule of general applicability. And third, and finally, even if a petition for rulemaking was an administrative process, which it is not, it was not available to Mr. Sims, the worded Mr. Sims from pursuing that purported remedy. And accordingly, there's no basis for disturbing Mr. Sims religious exercise. Department for that, and from doing that. The department affirmatively thwarted Mr. Sims, and this is in the record in the department's motion for summary judgment. This is a docket 47 at page 18. The department asserts in a footnote, it states that it should be apparent that FDOC would have an interest in not informing and instructing prisoners how to file lawsuits against the Florida Department of Corrections. And that word not is italicized. The Supreme Court explained in Ross, that in circumstances where a particular purported remedy is, is used by officials in a way that misleads prisoners, so as to prevent their use of the proper procedure, then that remedy cannot be deemed available. The department has no response in its reply brief as to this candid admission that it affirmatively pursued its interest in not informing and instructing prisoners how to file lawsuits. The only response that the government offers is that it's in a footnote, and that it was a statement by one of its lawyers, but it's a particular effort here in order to play hide and seek with this remedy. And this court even before the Supreme Court announced the standard in the Ross decision, already held that that sort of gamesmanship would not be tolerated. That was in the case titled Go Bear versus Lee County, which was cited with approval by the Supreme Court as an archetypal example of a situation or a circumstance where the unavailability of a remedy was made by playing hide and seek with various remedies. Counsel, counsel and looking at the Ross case, which unavailability circumstance do you think is your best argument for why the rulemaking remedy was unavailable? Your Honor, the Supreme Court in Ross describes three prongs of three circumstances where unavailability would be would be established. It's not an exclusive list. And while any inmate would only have to satisfy one of those prongs, we think that we satisfy all three. The Supreme to answer about which would be our best, the thwarted the facts relating to the thwarting of Mr. Sims are certainly strong, but the and have already been discussed. But the facts relating to the the simple dead end prong are also strong. The Supreme Court in Ross explained that a dead end operates where there's simply no actual potential for relief. And in this case, that's true both with respect to Mr. Sims and all other inmates. And this was evidence that came out at trial. With respect to Mr. Sims, the department stipulated that there would be no case by case exception. And Mr. Sims is not trying to change a rule as counsel asserted. He's trying to get an exception for himself to follow his religious beliefs. Isn't part of the rule that there are no exceptions? The rule actually, no, I wouldn't agree that the rule says that all inmates shall wear a beard of no longer than half an inch. But there's the prison grievance system allows prisoners to submit requests in order relating to various rules and various relief that they would like personally for themselves. Certainly, it's possible that a prisoner could ask for some sort of rule change that would impact the general prison population at large. But that's not in the case of a religious freedom case like this one before the court. This is a reluba case. And so Mr. Sims religious beliefs have to be considered. And the Supreme Court made that very clear and hold the hogs. The focus is on the particular inmate. And in this case, Mr. Sims was found to have exemplary behavior. He lives in a very special religious dormitory. And it was determined that with respect to him, having a religious beard would prevent no security concerns. And in fact, he has been wearing his religious beard since August of 2019. When the district court entered the injunction in his favor, and there's been no assertion that there's been any disturbance whatsoever from his religious expression. I'd like to I'd like to change your attention for a moment to make sure we cover your abandonment argument. What do you in your view, what would Florida the for exhaustion? Your Honor, if the defense was raised at trial, it would have been preserved. And we appeared to represent Mr. Sims at trial, we would have presented evidence in opposition to that defense. The Supreme Court made you think it's a factual question that the jury can decide whether he's also his remedies? Or do you think it's a legal question that we have to decide whether rulemaking a rulemaking request is required in order to exhaust? In this case, it's a mixed question of law. In fact, there was no jury, it was a bench trial, but we would have presented evidence, for example, relating to the thwarting of Mr. Sims. And the trial judge could have had the opportunity to hear the department's reasons as to why it has an interest in not informing Mr. Sims about the proper procedure that it believes is required to be followed regarding rulemaking. But none of that was presented at trial because the defense was not raised, it was abandoned. And the Supreme Court said, in the Jones versus Bott case, that exhaustion is an affirmative defense that has to be pled and then proved. So just like any other defense, it remains available to the state at trial, but the state chose not to raise it. And because of that, the court has held that when you consider or when you cannot revisit a summary judgment order after a full trial on the merits, because the trial record supersedes the record as it existed at summary judgment. And so in this case, if the department had raised exhaustion at trial, there would have been a presentation of evidence, there would have been an opportunity for Mr. Sims to question witnesses to present documentary evidence to question the wardens that appeared at the case. But none of that happened. And even counsel's argument that that this was a particular reasonable inference in the code provision that we discussed earlier, 33-103.11, relating to the statement in the administrative code that says, prisoners shall be entitled to proceed with judicial remedies as they will have exhausted administrative remedies. If the department misses the timeline, you could imagine a full line of questioning about that, and whether a reasonable prisoner would have been misled by that into believing as opposing counsel admitted an argument that that was a reasonable inference for a prisoner to believe such that the remedy would not be available. There are some circuits that have developed an exception on a purely legal question. So if we disagree with you and say that this is a purely legal question, why shouldn't we adopt the reasoning of those other circuits, adopting this exception to the general rule that we wouldn't review a denial of summary judgment after a full trial on the merits? Judge Branch, you're correct that that would be the only way for the department to wiggle out of the waiver issue if this court was to find there are no factual issues, it is a purely legal question, and then to consider whether an exception for revisiting summary judgment on purely legal questions is appropriate. This court should not recognize such an exception. First, it's not accurate to say that this court has never considered that issue before. In the Lind versus United Postal Service case, this court held that summary judgment would not be revisited. And while the question was not explicitly decided, this court cited with approval the Fifth Circuit's decision in JJ Case Company, or Black versus JJ Case Company. And in that decision, in footnote five of the Black case by the Fifth Circuit, there's an extended discussion rejecting the distinction between pure issues of fact and pure questions of law. So while you're correct that there are some circuits that have decided to accept a pure question of law preservation argument, this court's already cited the Fifth Circuit with approval and the Fifth Circuit found that was not appropriate. And that was because the Fifth Circuit found that it would be there was no public policy reason to benefit summary judgment losers who then failed to raise a defense at trial. And additionally, wading through the question of whether this is a pure issue of law, or a mixed question of law and fact can present a thorny legal issue. With respect to this case, though, this the exhaustion defense in Mr. Sims circumstances would have certainly presented a mixed question of fact. So that distinction wouldn't be appropriate in any case. And the Supreme Court has explicitly explicitly said, in its Ross decision, that issues relating to exhaustion do present factual issues and can depend on the facts of a particular case. And here all the discussion regarding whether or not the issues, whether or not Sims was thwarted from pursuing rulemaking, whether or not it actually was a dead end, because the department opined it had never granted such an exception. And also whether the remedy was so confusing and opaque as not to be available to the reasonable prisoner are all factual issues that would have been raised at trial. Additionally, opposing counsel noted that they do not contend that rulemaking is an administrative remedy that is required in every case that reinforces that last prong relating to opaqueness. How is a prisoner supposed to determine in which circumstances they're supposed to petition for rulemaking and in which circumstances they have properly exhausted their administrative remedies after seeking approval from three levels of the Florida prison system in Mr. Sims case, first, the chaplain, second, the assistant warden, and then the secretary at the apex of the department. And after all three of those processes, how would Mr. Sims know that when he was seeking a religious exception based on his own personal circumstances, he would file a petition for rulemaking. And that leads into our last argument, which is that rulemaking is specifically inappropriate in a circumstance like Mr. Sims, under Florida law, and this is in section 120.52 definition number 16. A rule is a statement of general applicability. The RLUPA statute actually uses that very same word general applicability to state that no government shall impose a substantial burden on religious exercise, even if the burden results from a rule of general applicability. And so that shows that RLUPA is specifically contemplating that it would entitle a meritorious prisoner claim to have an exception to a rule of general applicability. And under Florida law, Florida courts have have held that and this is in the Florida optometrics case, that when a case focuses on the particular circumstance of a prisoner rulemaking is specifically inappropriate. And so here you've got a rule on one hand, and you've got a request for a specific religious exception on the other. And those two concepts are fundamentally inconsistent. A petition for rulemaking would have to be denied if Mr. Sims said, please initiate rulemaking to grant me a religious beard. And so this would fall into the category of cases that counsel conceded does not require administrative rulemaking. And finally, Your Honors, the purpose of the PLRA is exhaustion requirement is to weed out meritless claims. This was a specifically meritorious claim that Mr. Sims brought. And so there's no furtherance of the PLRA is purpose or scheme in denying Mr. Sims the religious beard that he's and undoing his religious exercise. And if there are no more questions, I would yield the rest of my time. Thank you so much. Thank you, Miss Kelman. Mr. Esrae, you have four minutes on rebuttal. Thank you, Your Honor, just a couple of quick points. I'd like to start on preservation and our friends argue that there were attendant factual disputes that could have been aired at trial. But that's just not true under this court's be rich. But this court has said time and again is that the time to raise any factual disputes attendant to exhaustion is that the motion to dismiss stage and recently this court in excuse me in McElwain has said that district courts at that stage can even hold evidentiary hearings if they want to. So any factual disputes that should have been decided attendant to exhaustion should have been raised at the motion to dismiss and decided at the motion to dismiss. There And thus there was no purpose to be served by us raising this motion at trial. We could not have raised any additional factual matters. And the only issues that remain are pure law matters. Now, counsel urged you not to adopt a pure law exception, citing Lind. But I just don't think that Lin can reach that far because the issue in land was not a pure law exception. In land, the issue was whether the evidence at trial matched the evidence at summary judgment. And if you look at page 12 84 of land, what the Lind court said is that the child court had to make credibility findings, which was why emotion was required to be renewed. But I think this is very important. Footnote three of Lin the limits its reach in footnote three of Lin. It explains why it does not think it's holding conflicts with Holly. And what it says is Holly did not have the occasion to decide whether the denial of summary judgment would be reviewable in other situations. That's the same case here. Lin did not consider a pure law issue, and so Lin could not have reached the pure law issue that we are talking about now. And Judge Branch, I think you asked a very good question. What would be the purpose of requiring a trial motion for a pure law issue? And there would be none. It would only serve as a waiver trap for litigants and a burden on already busy district courts. Now, our friends also say that rule is an exception. But even if that is the case, booth councils that when the remedy can provide any relief to a prisoner, prisoners still need to utilize the remedy. So even if what Mr Sims wants is an exception, rule making could have remediated his harm by abolishing our beard length rule or in the alternative, giving him the fist length beard he wants. Now, our friends spend a lot of time talking about how exceptions are what is supposed to talk about the remedies in response to our loop up. One of them is generally changing the policy, and there is no contest that we could have done that through rulemaking. They say that Mr Sims was thwarted, but the only evidence they said of thwarting it oral argument is a one off statement in our motion for summary judgment. Now we don't endorse that statement. I don't think it's right. Florida prisons make rulemaking available to prisoners because it's in statutes that are put in front of them in the law library. But I think this is important. Mr Sims could not have been thwarted by something that happened in the summary judgment motion because the time to measure exhaustion is at the time of the filing of the complaint. They say that rulemaking operates as a simple dead end because there was a stipulation that Mr Sims would not have been granted a one off exemption. But I don't think that answers the question because rulemaking could have entirely changed the rule to give Mr Sims all of the relief that he wanted. And in fact, that's what the department did following pulpy hops. It uniformly changed the rule to extend the length of beards that would have given Mr Sims everything he wanted. Our friends last argument is they say was Mr was was Mr Sims point that everyone should be allowed to have a longer beard or that he should be allowed to have a longer beard. Thank you. I think it's a good question, and I don't think it's particularly clear from his grievances. I address. I direct you to page 56 of the appendix, which is Mr Sims grievance. I see my time has elapsed. If I may briefly answer Judge Brant's question. Thank you, Your Honor. He says is the present policy. Peren grooming on behalf of on one half inch beard does not meet my religious requirements. It's not clear whether he wants a one off exemption or whether he wants to just entirely change the policy. But I don't think it matters because under booth and booth mirrors this court's decision in Alexander V Hawk, the question is, could we give some relief through rulemaking? And I think that we absolutely could. We therefore ask that you reverse the district court and vacate the injunction. Thank you, Your Honors. Thank you. Thanks to both of you. We have your case under submission.